UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
*Southern Division*

LYDIA ABITU,　　　　　　　　　　＊

　　　Plaintiff,　　　　　　　　　＊

v.　　　　　　　　　　　　　　　＊　　Case No.: PWG-17-8

GBG, INC.,　　　　　　　　　　　＊

　　　Defendant.　　　　　　　　＊

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

On July 16, 2015, Plaintiff Lydia Abitu was using a lateral pulldown machine (the "Machine") at Gold's Gym in Gaithersburg Maryland, a gym that Defendant GBG, Inc. ("GBG") operates, when the cord in the machine broke and Abitu fell and sustained injuries. Am. Compl. ¶¶ 2–5, ECF No. 24.[1] She filed suit against GBG in the Circuit Court for Montgomery County, alleging negligence, ECF No. 2, and GBG removed to this Court, ECF No. 1. The parties completed the bulk of discovery by the September 5, 2017 deadline, at which point they submitted their Joint Status Report, ECF No. 27, and GBG sought leave to file a motion for summary judgment, asserting that the waiver of liability that Abitu signed barred her negligence claim, Def.'s Pre-Mot. Ltr., ECF No. 27-1.

GBG filed its Motion for Summary Judgment, ECF No. 31, which the parties fully briefed, ECF Nos. 31-1, 33, 35. In her Opposition, Abitu did not challenge the applicability of the waiver that she signed to a claim for ordinary negligence, but rather she asserted for the first time that GBG was *grossly* negligent and therefore not entitled to judgment as a matter of law.

---

[1] Ms. Abitu previously amended her complaint only to adjust the *ad damnum* clause. *See* Redline Am. Compl., ECF No. 24-1.

And, Abitu filed a pre-motion letter, seeking leave to file a motion for leave to amend her Complaint to allege gross negligence. ECF No. 32. I directed the parties to brief the motion to amend informally, ECF No. 37, which they did, ECF Nos. 39, 42, 43. A hearing is not necessary. *See* Loc. R. 105.6. Because Abitu has not shown good cause for amending to allege gross negligence at this late juncture, I will deny her Motion to Amend and grant GBG's Motion for Summary Judgment.

## **Background**

Abitu alleges in her one-count Amended Complaint for negligence that the Machine she was using when she was injured "had been recently inspected by maintenance, so the gym was on notice of the damaged cord," but GBG "fail[ed] to properly maintain the lateral pulldown machine." Am. Compl. ¶¶ 6, 9. I issued a Scheduling Order, setting a May 6, 2017 deadline for amending the pleadings and a discovery deadline of September 5, 2017. ECF No. 17. On June 21, 2017, Abitu received GBG's discovery responses, which included photographs of the Machine and interrogatory answers identifying Jamel Wilmore as the manager of the Gold's Gym in Gaithersburg at the time of the incident. Pl.'s Mot. to Am. 2. The photographs showed a notice sticker on the Machine that, although blurry, can be read to the extent that it indicated that certain categories of "COMMERCIAL MAINTENANCE," including "Clean[ing] Upholstery" and "Inspect[ing] Cables or Belts" and other parts of the machine, should be performed daily. Pl.'s Mot. Ex. D, ECF No. 39-5.

In response to Interrogatory No. 2, asking when the Machine was examined, repaired, maintained or cleaned, GBG stated that its "[e]mployees . . . regularly examine, maintain and/or clean the equipment in the facility," but "[t]here are no records maintained which indicate the date and/or time that this specific piece of equipment was examined, maintained and/or cleaned."

Def.'s Ex. 2, ECF No. 42-2.  In response to Interrogatory No. 11, asking for any affirmative defenses that GBG intended to raise, GBG stated: "Plaintiff signed a Membership Agreement which contains a Waiver of Liability." *Id.*  Thus, as of June 21, 2017, Abitu was on notice that GBG intended to raise waiver as a defense to her negligence claim.  She also was aware that the Machine required daily maintenance and that the discovery responses she had received stated that the Machine was "regularly" maintained, without providing more specificity.

Abitu, through her attorney's colleague Aleksandr Shubin, Esq., deposed Wilmore on August 22, 2017.  Wilmore Tr., Pl.'s Mot. Ex. F, ECF No. 39-7.  The deposition lasted all of thirteen minutes and generated a twenty-four page transcript.  *See id.*  Wilmore testified that one person, Matt Schrider, was "involved in maintaining the equipment," and it was his "job . . . to inspect the equipment." *Id.* at 10:15–11:9.  He stated that Schriber came to the gym "[o]nce a week." *Id.* at 19:16–21.

At the close of discovery two weeks later, GBG announced its intent to move for summary judgment based on the waiver of liability that Abitu signed.  Def.'s Pre-Mot. Ltr.  I held a conference call on September 13, 2017, at which I discussed a briefing schedule with the parties and set deadlines to which the parties agreed.  ECF No. 37.  Despite notice that Abitu believed that waiver would bar an ordinary negligence claim, and the possibility that the manager's deposition testimony could support a claim of gross negligence, Plaintiff's counsel neither mentioned the possibility of amendment to allege gross negligence nor informed the Court that he needed additional time to review Wilmore's deposition transcript to see if it supported such an amendment.  GBG filed its Motion for Summary Judgment on September 28, 2017.  Abitu filed a pre-motion letter regarding her interest in amending her Amended Complaint two weeks later, on October 12, 2017, two business days before her Opposition was due.

## Motion to Amend

### Standard of Review

Whether to grant a motion for leave to amend is within this Court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Rule 15(a)(2) typically provides the standard for whether to grant a motion for leave to amend that a plaintiff files more than twenty-one days after defendants file a responsive pleading or motion to dismiss. *See id.*; Fed. R. Civ. P. 15(a)(2). When, as here, the plaintiff moves to amend after the deadline established in the scheduling order for doing so, however, Rule 16(b)(4) becomes the starting point in the Court's analysis. *CBX Techs., Inc. v. GCC Techs., LLC*, No. JKB-10-2112, 2012 WL 3038639, at *3 (D. Md. July 24, 2012). Thus, "once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b); if the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under [Rule] 15(a)." *Id.* (quoting *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 631 (D. Md. 2003)); *see Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).

"'"[G]ood cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.' . . . Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *CBX Techs., Inc.*, 2012 WL 3038639, at *4 (quoting *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999) (citation omitted)). The Court focuses "less . . . on the substance of the proposed amendment and more . . . [on] the timeliness of the motion to amend 'and the reasons for its tardy submission.'" *Id.* (quoting *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373–74 (D. Md. 2002)). This is because "[a] court's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Id.* (quoting *Potomac Elec. Power Co.*, 190 F.R.D. at

4

376 (citation and quotation marks omitted)). Specifically, the Court considers whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party. *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768-69 (D. Md. 2010). When "at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline," a plaintiff has "good cause" for moving to amend at a later date. *Id.* at 768. If the Court concludes that the plaintiff had good cause for moving to amend after the deadline has passed, then, pursuant to Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires."

## Discussion

Abitu did not learn of the evidence that could support a claim for gross negligence—that is, Wilmore's testimony that GBG only performed necessary maintenance on the Machine weekly, when the sticker on the Machine required daily inspections—until August 22, 2017, only two weeks before the close of discovery, and well after the May 2017 amendment deadline. That delay certainly would justify a request to amend made promptly after the August 22, 2017 deposition. *See Tawwaab*, 729 F. Supp. 2d at 768. But Abitu waited more than seven weeks, during which time discovery closed; GBG filed a pre-motion letter regarding its summary judgment motion based on waiver; I held a pre-motion conference with the parties and discussed the schedule for briefing the summary judgment motion; and GBG filed its Motion for Summary Judgment based on waiver.

Abitu concedes that when she received GBG's discovery responses, she "was put on notice of the membership agreement, including the 'Waiver of Liability' clause, and that she would, thus, be required to plead a count of gross negligence to overcome this Waiver," and that

she "carefully sought to depose Mr. Jamel Wilmore to further develop her theory of notice and develop a new theory of gross negligence." Pl.'s Mot. 4. According to Abitu,

> After the close of discovery and before prematurely adding a count of gross negligence, Plaintiff waited until her case theory was well-developed. *See Sweetheart Plastics*, [*Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1044 (4th Cir. 1984)] (Plaintiff "could not in good faith have included in his complaint a count [for] trademark infringement before he was aware of evidence to support such a claim.")[.] It was not until Plaintiff was finished diligently working the case theory that she felt confident to file her Motion for Leave to Amend the Complaint to Add a Count of Gross Negligence.

*Id*. She also asserts that, in the time after Wilmore's deposition and before she filed her pre-motion letter, she "unsuccessfully sought to subpoena the maintenance worker in charge of maintaining and inspecting the gym's machinery . . . ." *Id.*

But, Abitu could have started developing her case theory in June, when she received GBG's discovery responses and learned of the waiver. And, as of August 22, 2017, she knew of the evidence that, on October 12, 2017, she acknowledges was sufficient to support her request to amend. Thus, the seven week delay from August 22, 2017 to October 12, 2017 was not occasioned by a need to develop the case nor an inability to add the claim "before [s]he was aware of evidence to support such a claim." *Id*. (quoting *Sweetheart Plastics*, 743 F.2d at 1044). "Courts in the Fourth Circuit deny leave to amend a complaint past the deadline established by a scheduling order where the moving party has been careless in developing his claims or where he has failed to satisfactorily account for his failure to do so." *Tawwaab*, 729 F.Supp.2d at 769; *see also Kantsevoy v. LumenR LLC*, No. ELH-17-359, 2018 WL 1301247, at *7 (D. Md. Mar. 13, 2018) (concluding that "the fact that LumenR had not previously 'appreciated' its potential counterclaim, despite having knowledge of the document that purportedly gave rise to it, does not support its claim of diligence"); *Hemphill v. ARAMARK Corp.*, No. 12-1584-ELH, 2014 WL 1248296, at *26 (D. Md. Mar. 25, 2014) ("And, even if plaintiff learned of the information late

6

in discovery, he waited over two months after discovery closed to seek leave to amend. *See Howard v. Inova Health Care Servs.,* 302 Fed. Appx. 166, 181 (4th Cir. 2008) ("'[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent.'") (quoting *Deasy v. Hill,* 833 F.2d 38, 41 (4th Cir.1987))."), *aff'd,* 582 F. App'x 151 (4th Cir. 2014). Here, Abitu has not shown diligence or provided any reasonable justification for her seven week delay.

Moreover, it is a "well-established proposition that an amendment sought late in a litigation—such as near or after the end of discovery, during the briefing of dispositive motions, or on the eve of trial—may be denied as prejudicial." *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 321 (D. Md. 2015). In *Elat v. Ngoubene*, 993 F. Supp. 2d 497 (D. Md. 2014), this Court concluded that "the prejudice to Defendants [wa]s not insignificant," given that "[d]iscovery [wa]s complete, and Defendants ha[d] filed [a] pending summary judgment motion, as well as a reply and a motion in limine that [wa]s pertinent to the evidence considered on summary judgment," and as a result, "Defendants 'already incurred significant time and expense in discovery and in preparation for a summary judgment motion.'" *Id.* at 520 (quoting *Skinner v. First Am. Bank of Va.,* No. 93-2493, 1995 WL 507264, at *2 (4th Cir. 1995) (unpublished)). Here also, there is "not insignificant" prejudice to GBG, as the parties have completed discovery (without GBG having notice of a gross negligence claim) and GBG has filed a pre-motion letter as well as fully briefed its summary judgment motion, thereby "incur[ing] significant time and expense." *Id.*; *see also Young*, 108 F. Supp. 3d at 321; *Skinner*, 1995 WL 507264, at *2.

In sum, Abitu delayed seven weeks in seeking leave to amend, while GBG devoted considerable time and incurred real expense filing its dispositive motion and completing discovery without the opportunity to address the proposed gross negligence claim. To permit the

7

amendment Abitu now seeks, I would have to reopen discovery, and it is likely that there would be another round of dispositive motions practice on an entirely new issue of law. While this may be justified when the party seeking to amend after the deadline for doing so has passed has acted promptly and diligently, it is not when that is not the case. Abitu has not demonstrated that she worked diligently to file her request to amend promptly. *See Kantsevoy*, 2018 WL 1301247, at *7; *CBX Techs., Inc.*, 2012 WL 3038639, at *4; *Tawwaab*, 729 F. Supp. 2d at 768–69. Under these circumstances, Abitu has not shown good cause for amending her pleading. *See Kantsevoy*, 2018 WL 1301247, at *7; *CBX Techs., Inc.*, 2012 WL 3038639, at *4; *Tawwaab*, 729 F. Supp. 2d at 768–69; *Potomac Elec. Power Co.*, 190 F.R.D. at 375. Her Motion to Amend IS DENIED.

**Motion for Summary Judgment**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* The Court considers the undisputed facts,

8

and to the extent there is a genuine dispute of material fact, "this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Downing v. Balt. City Bd. of Sch. Comm'rs*, No. RDB-12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Here, it is undisputed that Abitu signed a Membership Agreement that included a Waiver of Liability, in which she

> **WAIVE[D] ANY AND ALL CLAIMS OR ACTIONS THAT [SHE] MAY HAVE AGAINST GOLD'S GYM, ANY OF ITS PARENTS, SUBSIDIARIES OR OTHER AFFILIATES … FOR ANY SUCH PERSONAL INJURY … INCLUDING, WITHOUT LIMITATION: (I) INJURIES ARISING FROM USE OF ANY EXERCISE EQUIPMENT, MACHINES … , (III) <u>INJURIES ARISING FROM GOLD'S GYM'S NEGLIGENCE, WHETHER DIRECT OR INDIRECT</u> . . . .**

Def.'s Mem. Ex. 1, ECF No. 31-2; Pl.'s Opp'n 4 (acknowledging that "Plaintiff signed an Agreement containing an otherwise enforceable Waiver of Liability Clause" and arguing that "Defendant acted with gross negligence, effectively making the Waiver of Liability clause unenforceable"). Therefore, she cannot prevail on a claim for ordinary negligence under Maryland law[2] unless an exception applies. *See* Def.'s Mem. 4–9; Pl.'s Opp'n 4; *United Nat'l Ins. Co. v. Peninsula Roofing Co., Inc.*, No. GLR-16-3548, 2018 WL 1583554, at *6 (D. Md. Mar. 30, 2018) ("An exculpatory clause 'relieves a party from liability for harm caused by his or her own negligence.'" (quoting *Coll. of Notre Dame of Md., Inc. v. Morabito Consultants, Inc.*, 752 A.2d 265, 270 (Md. Ct. Spec. App. 2000))); *Nerenhausen v. Washco Mgmt. Corp.*, No. JKB-15-1313, 2017 WL 1398267, at *3 (D. Md. Apr. 18, 2017) ("Because this exculpatory clause effectively absolves Defendants from liability for Plaintiffs' claim of negligence, the Court will grant Defendants' motion for summary judgment on that cause of action."). The

---

[2] The parties agree that Maryland law applies. *See* Def.'s Mem. 4 (applying Maryland law); Pl.'s Opp'n 3 (applying Maryland law).

> [t]hree exceptions that render an unambiguous and otherwise statutorily enforceable exculpatory clause void are (1) when the party protected by the clause intentionally causes harm or engages in acts of reckless, wanton, or gross negligence; (2) when the bargaining power of one party to the contract is so grossly unequal so as to put that party at the mercy of the other's negligence; and (3) when the transaction involves the public interest.

*Nerenhausen*, 2017 WL 1398267, at *3 n.4 (citing *Seigneur v. Nat'l Fitness Inst., Inc.*, 752 A.2d 631, 638 (Md. Ct. Spec. App. 2000)).

Abitu argues that the gross negligence exception should apply, Pl.'s Opp'n 4, but concedes that she failed to claim gross negligence, and her factual allegations do not support a claim of gross negligence, Pl.'s Mot. to Am. 5 ("Plaintiff's additional [proposed] claim of gross negligence . . is the only exception to the waiver of liability that will keep Plaintiff's claim alive and is therefore necessary."). Yet, gross negligence must be pleaded. *See Estate of Leysath v. Maryland*, No. GJH-17-1362, 2018 WL 1225087, at *5 (D. Md. Mar. 6, 2018) (dismissing tort claims that failed to allege gross negligence or malice where Maryland Tort Claims Act barred claims of ordinary negligence, even though plaintiffs argued in opposition that defendants acted with gross negligence); *Littleton v. Maryland*, No. JKB-17-3164, 2018 WL 1123694, at *9 (D. Md. Mar. 1, 2018) ("This negligence claim will be dismissed because Plaintiff has failed to allege malice or gross negligence necessary to overcome qualified immunity for employers or for state personnel under Maryland law."); *Boyer v. State*, 594 A.2d 121, 132 (Md. 1991) ("In order to charge [defendant] with gross negligence, the plaintiffs must have pled *facts* showing that [defendant] acted with a wanton and reckless disregard for others."). Abitu's allegations that that the Machine she was using when she was injured "had been recently inspected by maintenance, so the gym was on notice of the damaged cord," but GBG "fail[ed] to properly maintain the lateral pulldown machine," Am. Compl. ¶¶ 6, 9, state a claim for ordinary negligence, not gross negligence. *See Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (stating that gross negligence is

"something *more* than simple negligence, and likely more akin to reckless conduct" (quoting *Taylor v. Harford County Dep't of Soc. Servs.,* 862 A.2d 1026, 1035 (Md. 2004) (emphasis in original))); *see also id.* ("[G]ross negligence is 'an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.'" (quoting *Liscombe v. Potomac Edison Co.,* 495 A.2d 838, 846 (Md. 1985))). Accordingly, GBG is entitled to judgment as a matter of law on Abitu's Amended Complaint, which includes one count for negligence and does not allege gross negligence. *See id.; see also United Nat'l Ins. Co.*, 2018 WL 1583554, at \*6; *Nerenhausen*, 2017 WL 1398267, at \*3. GBG's Motion for Summary Judgment IS GRANTED.

## **ORDER**

For the reasons stated in this Memorandum Opinion and Order, it is, this 1st day of May, 2018, hereby ORDERED that

1. Abitu's Motion to Amend, ECF No. 39, IS DENIED;
2. GBG's Motion for Summary Judgment, ECF No. 31, IS GRANTED;
3. Judgment IS ENTERED in GBG's favor; and
4. The Clerk SHALL CLOSE this case.

/S/
Paul W. Grimm
United States District Judge

lyb